IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | INDICTMENT |
| Plaintiff, | CRIMINAL No. 25- 303 (CVR) |
| v. | Violations: |
| [1] KEVIN A. THOBIAS, | (COUNT ONE)<br>Title 18, United States Code, §§ 1349 and 1343 |
| Defendant. | (COUNTS TWO and THREE)<br>Title 18, United States Code, § 1343 |
| | (COUNT FOUR)<br>Title 18, United States Code, § 1957 |
| | Forfeiture Allegation<br>Title 18, United States Code, §§ 981, 982; Title 21, United States Code, § 853; Title 28, United States Code, § 2461; and Rule 32.2(a) F.R.C.P. |
| | (FOUR COUNTS) |

THE GRAND JURY CHARGES:

COUNT ONE
(Conspiracy to Commit Wire Fraud)
Title 18, United States Code, Sections 1349 and 1343

GENERAL ALLEGATIONS

1.      Amazon.com, Inc. was a Seattle-based company that operated the Amazon
Marketplace, an online marketplace. The Amazon Marketplace was an electronic commerce
(or "e-commerce") digital platform, on which consumers purchased goods, multimedia, and
services from online merchants. Merchants who made sales on the Amazon Marketplace
included Amazon itself and "third-party" sellers, that is non-Amazon independent sellers who
sell through the Amazon Marketplace.

2.      From in or about February 2018 to in about December 2020, defendant Kevin A. Thobias, through a series of limited liability companies owned by Nutragroup Holdings LLC ("Nutragroup"), was a third-party seller that sold supplements on Amazon Marketplace, including, but not limited to testosterone supplements.

3.      On or about February 6, 2018, Nutragroup applied for a tax exemption pursuant to Act 20 of January 17, 2012, as amended, that is, the Act to Promote the Export of Services ("Act 20"). Defendant Kevin Thobias provided a false answer to a question regarding his background information on the Tax Incentives Application for Act 20.  That tax exemption was granted by the Puerto Rico Department of Economic Development and Commerce (DEDC).

4.      Defendant Kevin A.  Thobias was the only stockholder listed for Nutragroup in the Tax Incentives Application for Act 20 of January 17, 2012, as amended.

5.      Nutragroup and its multiple LLCs received from DEDC on or about May 17, 2018, the tax exemption pursuant to Act 20.

6.      On or about September 19, 2018, defendant Kevin A. Thobias applied for a tax exemption pursuant to Act 22 of January 17, 2012, as amended, that is, the Act to Promote the Relocation of Individual Investors to Puerto Rico. Defendant Kevin Thobias provided a false answer to a question regarding his background information on the Tax Incentives Application for Act 22 ("Act 22").

7.      On or about November 6, 2018, DEDC granted defendant Kevin A. Thobias a tax exemption, pursuant to the terms of Act No. 22.

8.      Act 20, also known as the Export Services Act, offered tax incentives for Puerto Rican companies to export services to other jurisdictions. The tax benefits on income derived

from customers outside Puerto Rico in relation to services rendered from Puerto Rico included a fixed income tax rate of 4% for eligible export services, a 100% tax-exemption on dividends from earnings and profits, and a 60% tax-exemption on local municipal taxes, all with a 20-year decree guaranteeing these rates.

9.     Act 22, also known as the Individual Investors Act, offered tax incentives to individuals who relocated to Puerto Rico. The tax benefits for a bona.fide Puerto Rican resident included a total exemption from local income taxes on all passive income, and a 100% exemption on dividends, interest on capital gains, all with a 20-year decree guaranteeing these rates.  In order to qualify for Act 22, there are several requirements for an individual to meet, including that they are present in Puerto Rico for at least 183 days during the year and have no significant connection to the U.S. mainland.

10.     In order to obtain a tax exemption decree pursuant to Act 20 and Act 22, a service provider was required to submit an application with the Government of Puerto Rico, Department of Economic Development, Office of Industrial Tax Exemption. If approved, the decree provided the full details of the tax rates and conditions mandated by Act 20 and Act 22 and was considered a contract between the service provider and Government of Puerto Rico.

11.     Under United States law, a bona.fide resident of Puerto Rico was not subject to federal income taxes derived from sources within Puerto Rico, he or she was only subject to those taxes derived from external sources.

12.     Nutragroup's tax exemption was based on the representation that it would not hold title to the products sold.  Badass Fulfillment LLC was used by defendant Kevin A. Thobias to purchase the supplements from the suppliers and hold title to the supplements until sold.

13.    Defendant Kevin A. Thobias used the following interstate wire messaging applications to conduct the business of Nutragroup, including the procurement, coordination, and receipt of services that provided him with unfair competitive advantages over other sellers within the Amazon Marketplace and resulted in the manipulation of consumer perception of Nutragroup's products, including but not limited, to a testosterone supplement (hereinafter referred to as Testosterone Supplement A):

a.    WhatsApp       is      a        free         messaging application owned by Meta (formerly Facebook), through which users can send text and voice messages on the platform or communicate live via voice or video chat. WhatsApp also supports location and image sharing. The service was primarily used on mobile phones, as it required a mobile phone number to sign up, but the platform could be accessed via a computer's internet browser as well.

b.    WeChat is a messaging application owned by technology and entertainment conglomerate Tencent. WeChat has well over one billion monthly users, the majority of whom are based in China. The application allows users to exchange text messages, make video and audio calls, play games, pay bills, and share posts with their social network. Tencent is headquartered in Shenzhen, China.

c.    Telegram is a cloud-based messaging application that allowed users to exchange text messages, hold voice calls, share files, join groups of up to 200,000 members, and subscribe to public broadcast channels.

14.    Defendant Kevin A. Thobias, in his own capacity and through Nutragroup, had no less than two employees between 2018 to 2020 to execute tasks needed to operate

Nutragroup's business, that is the sale of supplements on the Amazon marketplace. Between 2018 to 2020, defendant Kevin A. Thobias caused those employees to perform and execute tasks to coordinate and receive services that provided him with unfair competitive advantages over other sellers within the Amazon Marketplace, and resulted in the manipulation of consumer perception of Nutragroup's products and the defrauding of customers on Amazon Marketplace.

15.    Defendant Kevin A. Thobias sold certain assets to Company A on or about December 30, 2020, to wit, Amazon Accounts operated by defendant and his Affiliates, Seller Central Account Numbers, Business Tradenames, Store Fronts, Domains, Email Databases, email addresses associated with the seller accounts, and Amazon Product Listings for three distinct products, including testosterone supplements.

16.    With the proceeds of the sale to Company A, defendant Kevin A. Thobias invested in stocks through a brokerage account. Using that brokerage account as collateral for a loan, defendant Kevin A. Thobias undertook a series of financial transactions to acquire a 2018 BUGATTI CHRION (VIN # VF9SP3V34JM795083).

## THE SCHEME TO DEFRAUD

17.    Beginning at least as early as in or about September 2018 and continuing through in or about December 2020, in the District of Puerto Rico and elsewhere, defendant Kevin A. Thobias did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud consumers who used the Amazon Marketplace of money and property and to obtain money and property from said consumers by means of materially false and fraudulent pretenses, representations and promises.

## MANNERS AND MEANS OF THE SCHEME TO DEFRAUD

18. The manners and means utilized to accomplish the scheme to defraud included, among others, the following:

    a. Defendant Kevin A. Thobias would procure and cause others in his employ to procure services, at times, referred to as black hat services that would give him as a third-party seller on Amazon an unfair competitive advantage over other third-party sellers, and impaired consumers' access to accurate, reliable information about merchants, products, and reviews on the Amazon Marketplace.

    b. Defendant Kevin A. Thobias would procure and cause others in his employ to procure services that included, but were not limited to, removal of negative product reviews from product listings and removal of competitors from product listings.

    c. Defendant Kevin A. Thobias would procure and coordinate these services using electronic means, including messaging services such as WhatsApp, WeChat, and Telegram.

    d. Defendant Kevin A. Thobias would pay and cause others in his employ to pay for the services through electronic means including through PayPal.

    e. Defendant Kevin A. Thobias would procure and pay and caused others to procure and pay for services, including but not limited to removal of negative reviews of his products on the Amazon Marketplace, including causing the misrepresentation of material facts regarding products' ratings to obtain

purchases and creating obstacles that impaired other third-party sellers' ability to sell in the Amazon Marketplace.

## STATUTORY ALLEGATIONS

19.     Beginning at least as early as in or about September 2018 and continuing through in or about December 2020, in the District of Puerto Rico and elsewhere, defendant Kevin A. Thobias, and others known and unknown to the Grand Jury, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

20.     It was a part and object of the conspiracy that defendant Kevin A. Thobias and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, defendant Kevin A. Thobias, and others known and unknown to the Grand Jury, agreed to procure and receive services that bestowed on defendant Kevin A. Thobias an unfair competitive advantage over other third-party sellers, and to cause the misrepresentation of material facts regarding products' ratings to obtain purchases on the Amazon Marketplace. All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO & THREE
(Wire Fraud)
Title 18, United States Code, Section 1343

1. The allegations contained in paragraphs 1 to 16 of Count One of this Indictment are incorporated as if fully set forth herein.

2. From in or about around December 2020 to in or about January 2021, in the District of Puerto Rico and elsewhere, defendant Kevin A. Thobias, devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, through interstate wire communications, in violation of Title 18, United States Code, Section 1343;

### THE SCHEME TO DEFRAUD

3. From in or about December 2020 to in or about January 2021, in the District of Puerto Rico and elsewhere, defendant Kevin A. Thobias did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Company A by omitting during the sale of assets to Company A` that defendant Kevin A. Thobias had procured, coordinated and received services that provided him with unfair competitive advantages over other sellers within the Amazon Marketplace and resulted in the misrepresentation of material facts regarding the Purchased Assets, including the true customer rating of Testosterone Supplement A.

### MANNERS AND MEANS OF THE SCHEME TO DEFRAUD

4. The manners and means utilized to accomplish the scheme to defraud included, among others, that Defendant Kevin A. Thobias communicated through electronic means, including messaging services such as WhatsApp and Telegram, to further the scheme.

EXECUTION OF THE SCHEME

5.    On or about each of the dates set forth below, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, defendant for the purpose of executing the scheme described in Count Two above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 2 | February 4, 2021 | A wire transfer of $2,248,635.00 into Banco Popular de Puerto Rico Account ending in 2618 |
| 3 | July 2, 2021 | A wire transfer of $4,499,985.00 into Banco Popular de Puerto Rico Account ending in 2618 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT FOUR
(Money Laundering)
Title 18, United States Code, Section 1957

1.  The allegations contained in paragraphs 1 to 16 of Count One of this Indictment are incorporated as if fully set forth herein.

2.  On or about October 28, 2021, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendant Kevin A. Thobias, did knowingly engage and attempt to engage in the following monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal, deposit, and transfer of U.S. currency, fund, and monetary instruments, such property having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud.

| Monetary Transaction |
|---|
| A wire transfer from JP Morgan Chase Bank N.A. Account ending in 2541 for $3,250,000 to purchase a 2018 BUGATTI CHRION (VIN # VF9SP3V34JM795083) |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION
### Wire Fraud

1. The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 1343 set forth in Counts One through Three of this Indictment, the defendant charged shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), including but not limited to, a 2018 BUGATTI CHRION (VIN # VF9SP3V34JM795083).

3. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

### FORFEITURE ALLEGATION
### Money Laundering

1.     The allegations contained in Count Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

2.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, the defendant therein charged shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property including but not limited to, a 2018 BUGATTI CHRION (VIN # VF9SP3V34JM795083).

3.     If any of the property described above, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

TRUE BILL.

FOREPERSON
Date: 7-2-2025

W. STEPHEN MULDROW
United States Attorney

Myriam Y. Fernandez-Gonzalez
Assistant United States Attorney
Chief—Asset Recovery and Money Laundering