IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

KEVIN A. THOBIAS,

Defendant.

CRIM. NO. 25-303 (CVR)

**OPINION AND ORDER**

**PROCEDURAL BACKGROUND**

On July 2, 2025, a grand jury returned a four-count indictment against Defendant Kevin A. Thobias ("Mr. Thobias" or "Defendant") charging him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957. These alleged violations took place between February 2018 and December 2020 while Mr. Thobias was operating Nutragroup Holdings LLC ("Nutragroup") and selling supplements on Amazon Marketplace. (Docket No. 1).

The indictment alleges Mr. Thobias provided false answers to questions regarding his background information on the Tax Incentives Applications under the Act to Promote the Export of Services, P.R. Laws Ann. tit. 13, §§ 10831 *et seq*. ("Act 20") and the Act to Promote the Relocation of Individual Investors to Puerto Rico, P.R. Laws Ann. tit. 15, §§ 10851 *et seq*. ("Act 22"), for which he received tax exemptions. Specifically, it states these exemptions were granted because Nutragroup did not hold title to the products sold, however, Mr. Thobias used Badass Fulfillment LLC to purchase the supplements from

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 2
_____

suppliers and owned the supplements until they were sold. It further claims Mr. Thobias used wire messaging applications to conduct the business with no less than two employees, that Defendant made those employees perform and execute tasks to coordinate and receive services that provided him with unfair competitive advantages over other sellers within Amazon Marketplace by manipulating the products' reviews and ratings and removing competitors from the product listings, and that he caused two separate wire transfers exceeding $6,000,000.00. (Id.).

The indictment further claims that, on or about December 30, 2020, Mr. Thobias sold certain assets to Company A, and Amazon Product Listings for three distinct products, including supplements. The indictment also states that, with the proceeds Defendant obtained from the sale, he invested in stocks through a brokerage account, and used that brokerage account as collateral for a loan to acquire a 2018 Bugatti Chrion. (Id.).

Before the Court is "Defendant's Motion to Dismiss Counts One Through Four for Failure to State an Offense Pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v)", the Government's Opposition and Defendant's subsequent Reply. (Docket Nos. 92, 106 and 108).

For the following reasons, Defendant's Motion to Dismiss is DENIED. (Docket No. 92).

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b)(1) allows defendants to present motions to resolve issues the Court can determine without a trial on the merits. FED. R. CRIM. P. 12(b)(1). Rule 12(b)(3) lists various defenses, objections and requests that must be raised before trial, including any alleged deficiency in the indictment. FED. R. CRIM. P. 12(b)(3)(B)(v); United States v. Rodríguez-Rivera, 918 F.3d 32, 34 (1st Cir. 2019).

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 3
_____

"A motion to dismiss based on failure to state an offense requires the district court to determine whether the indictment's allegations are sufficient, not to weigh, pre-trial and on a contested record, whether the government has sufficient evidence to establish that the offense was committed." United States v. Martín-Alfaro, 567 F.Supp.3d 347, 351 (D.P.R. 2021). For an offense to be sufficient, an indictment must "sketch[] out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011). See also Hamling v. U.S., 418 U.S. 87, 117 (1974) (the indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend" and "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").

"A court reads an indictment as a whole and construes the allegations in a practical sense, with all necessary implications. United States v. Colón-Quiles, 859 F.Supp.2d 229, 231 (D.P.R. 2012) (cleaned up). In evaluating whether to dismiss a count of an indictment, the Court "must accept the allegations in [it] as true." United States v. Bravo-Fernández, 756 F.Supp.2d 184, 191 (D.P.R. 2010) (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952)). If an indictment connects the elements and the facts, the motion must be denied, as "[t]he law requires no more." United States v. Stepanets, 879 F.3d 367, 373 (1st Cir. 2018).

**ANALYSIS**

Mr. Thobias alleges all counts of the indictment fail to state an offense pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v). First, he avers the indictment fails to allege a scheme to

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 4
_____

deprive victims of "money or property" as required for wire fraud and conspiracy to commit wire fraud under 18 U.S.C. §§ 1343 and 1349. Specifically, he explains the indictment's core theory mirrors the right-to-control doctrine, which has been discredited, as it focuses on deception alone and not on the loss of tangible property. He further argues that the alleged manipulation of reviews and ratings does not target consumers' money or property, rather that it is an intangible interest the Supreme Court has ruled does not qualify as fraud and that the alleged omissions in the asset sale do not constitute wire fraud since there was no property deprivation nor duty to disclose. See Ciminelli v. United States, 598 U.S. 306 (2023); see also United States v. Abdelaziz, 68 F.4th 1 (1st Cir. 2023). He posits these fake-review schemes are routinely pressed as civil deceptive-practice violations under Section 5 of the Federal Trade Commission Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C § 45. Second, he contends the indictment is vague since it does not explain what property was taken or how. Third, he claims omissions are only fraudulent if there is a duty to speak, which typically arises from a fiduciary or confidential relationship. Chiarella v. United States, 445 U.S. 222, 228 (1980). To this effect, Mr. Thobias asserts that no such duty exists between himself and Company A, but that even if it did, it would be informational and not proprietary. Moreover, the indictment fails to explain how the omission of the procurement services activity relating to customer ratings is material, both necessary elements to constitute wire fraud. Finally, he avers that, due to the lack of a legitimate wire fraud offense, there is no conspiracy to commit wire fraud, nor possible money laundering. (Docket No. 92).

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 5
_____

In opposition, the Government argues the indictment clearly alleged all elements of all counts charged. Furthermore, it claims that, contrary to Mr. Thobias' contention, wire fraud does not require economic loss, as stated in Kousisis v. United States, 605 U.S. 114, 124 (2025). ("[T]he wire fraud statute is agnostic about economic loss. The statute does not so much as mention loss, let alone require it. Instead, a defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off."). The Government further contends the indictment is not based on a right-to-control theory, rather a fraudulent-inducement theory which does not treat mere information as the protected interest, rather it protects money and property. See Ciminelli, 598 U.S. at 317-318; Kousisis, 605 U.S. at 135. Finally, the Government maintains it does not need to prove a duty to disclose, rather it just needs to prove the falsehoods relied upon had "a natural tendency to influence or were capable of influencing their target's decision." United States v. Condron, 98 F.4th 1, 19-20 (1st Cir. 2024) (cleaned up). In sum, the Government moves the Court to deny Defendant's Motion to Dismiss as the indictment is sufficient. (Docket No. 106).

Mr. Thobias argues in his Reply that the Government erroneously relies on Kousisis because that case, unlike the present one, is about someone who misrepresented a service. Moreover, he reiterates that the indictment is insufficient because it lacks specific facts showing that traditional money or property were the object of a scheme, the scheme must target traditional property, the indictment alleges no lies made to customers about the supplements and the indictment alleges an omission without there being a duty to speak. See Chiarella, 445 U.S. at 222. (Docket No. 108).

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 6
_____

"[A] valid indictment must elucidate the elements of the crime." Martín-Alfaro, 567 F.Supp.3d at 354. The Court's decision as to the indictment's validity must be "based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." Id. (quoting United States v. Bergrin, 650 F.3d 257, 268 (3rd Cir. 2011)). Once the elements are established, the Court need not discuss the allegations' validity.

The elements of each of the offenses charged are brief. To be guilty of a conspiracy to commit wire fraud, a defendant must have made an agreement with at least one other person to commit a crime, in this case wire fraud. United States v. Tum, 707 F.3d 68, 74 (1st Cir. 2013). "One must be a willing participant but need not 'know[] the exact scope and extent of the collective endeavor.'" Id. (quoting United States v. Ruiz, 905 F.2d 499, 506 (1st Cir. 1990)). To be guilty of wire fraud, the defendant must have: (1) devised or intended to devise a scheme (2) to obtain money or property (3) by means of false or fraudulent pretenses, representations and promises. 18 U.S.C. § 1343; Tum, 707 F.3d at 75. Finally, to be guilty of money laundering, a defendant must have knowingly engaged or attempted to engage in a monetary transaction in property, exceeding $10,000.00, derived from specified unlawful activity. 18 U.S.C. § 1957; United States v. Abbas, 100 F.4th 267, 283 (1st Cir. 2024).

The indictment alleges that Mr. Thobias lied on his applications for Act 20 and Act 22 tax exemptions, used wire messaging applications to conduct the business of Nutragroup, removed negative product reviews and competitors from the product listings within Amazon Marketplace with the help of at least two of his employees, sent over $6,000,000.00 through two separate wire transfers, sold assets and Amazon Product

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 7
_____

Listings to Company A and used the proceeds of the sale to Company A to invest in stocks through a brokerage account, which he later used as collateral for a loan to acquire a luxury sports vehicle, that is, a 2018 Bugatti Chrion. (Docket No. 1).

Taking the allegations of the indictment as true, and without ruling on the merits of said allegations, the Court finds they are sufficient as they state the elements of each offense. Regarding Count One, among other specific details[1], the indictment indicates Mr. Thobias worked with at least two other people in the planification of the alleged scheme to defraud. Regarding Counts Two and Three, the allegations include among other information[2] that Mr. Thobias (1) lied on the Act 20 and Act 22 forms to obtain a tax exemption and removed negative product reviews and competitors from the product listings on Amazon Marketplace (2) to obtain money from consumers and from Company A (3) by inflating his products' reviews and omitting this information to Company A before completing the sale. Finally, as to Count Four, the indictment alleges among other aspects[3] that Mr. Thobias used the money made from these fraudulent sales to invest in stocks through a brokerage account, which eventually led him to purchase the Bugatti.

Thus, the Court finds the indictment contains sufficient factual allegations to successfully establish all elements of the offenses charged, enables Mr. Thobias to prepare

---

[1] Count One of the Indictment includes a section of "General Allegations" which has sixteen paragraphs; a section of "The Scheme to Defraud" which has one paragraph; a section of "Manners and Means of the Scheme to Defraud" which has one paragraph with five sub-paragraphs; and a section of "Statutory Allegations" which has two paragraphs. (Docket No. 1, pp. 1-7).

[2] Counts Two and Three of the Indictment incorporate the allegations contained in paragraphs 1 to 16 of Count One; has one general paragraph; a section of "The Scheme to Defraud" with one paragraph; a section of "Manners and Means of the Scheme to Defraud" with one paragraph; and a section of "Execution of the Scheme" with one paragraph and a table. (Id, pp. 8-9).

[3] Count Four of the Indictment incorporates the allegations contained in paragraphs 1 to 16 of Count One; has one general paragraph; and a table. (Id, pp. 9-10).

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 8
_____

his defense and raise double jeopardy in any future prosecution for the same offense. At this juncture, "[t]he law requires no more." Stepanets, 879 F.3d at 373. Ultimately, the jury will assess and find whether the Government has satisfied each element of the charged offenses after considering all the evidence.

As to the other arguments raised by the parties in support and against dismissal of the indictment, the Court agrees with the Government that wire fraud does not require economic loss, that the indictment does not present a right to control theory but rather a fraudulent-inducement theory and that it does not need to prove a duty to disclose for the reasons well explained by the Government which are incorporated herein by reference. (Docket No. 106, pp. 5-7).

In sum, the First Circuit has noted "that, given 'the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment.'" United States v. Ramos-González, 775 F.3d 483, 493 (1st Cir. 2015) (citing United States v. Rivera-Santiago, 872 F.2d 1073, 1088 (1st Cir. 1988)). Dismissing the indictment is a remedy that is "rare," "drastic," and "draconian." United States v. Laurent, 607 F.3d 895, 901 (1st Cir. 2010).[4] The present case does not present a suitable occasion for dismissing an indictment.

---

[4] The First Circuit has described the dismissal of an indictment in other cases as "drastic," United States v. Soto-Beníquez, 356 F.3d 1, 30 (1st Cir. 2004), "extraordinary," United States v. Hemmer, 729 F.2d 10, 13 (1st Cir. 1984), "draconian," United States v. Josleyn, 99 F.3d 1182, 1196 (1st Cir. 1996), or "extreme," United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994).

United States of America v. Kevin A. Thobias
Opinion and Order
Civil 25-303 (CVR)
Page 9
_____

## CONCLUSION

For the foregoing reasons, "Defendant's Motion to Dismiss Counts One Through Four for Failure to State an Offense Pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v)" is DENIED. (Docket No. 92).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 8th day of April 2026.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE